Next case is 417-0058. Byram v. Danner. For the appellant we have Bethany Hager and for the appellant we have Miranda Soucy. And you may proceed. May it please the court, counsel, Bethany Hager for the plaintiff appellants today. This case is full of confusion I believe on the trial court level and that was shown in the trial court's order of December 19th and also February 11th, 2016. So I'd like to start by drawing the court's attention there. It's in the appendix attached to the appellant's brief, page 2. In the December 19th order, the trial court stated that it was dismissing plaintiff's complaint pursuant to section 2619. However, then the body of the court's order went on to address substance of failure to state a claim that would appropriately be a 2615 motion. By the same token, in the court's February 11th order, the court stated it was dismissing plaintiff's complaint under section 2615, but then went on to address substantively issues that would have been more appropriate under a 2619 motion. And it's plaintiff's contention that the court misunderstood or misapplied the standards of review under those two sections. And that makes a big difference to the survival of plaintiff's complaint here. So a 2619 motion, since that was the most recent one before the lower court, requires that the defendant bring in some kind of affirmative material that defeats the complaint. Now that affirmative material, this court has stated, is not supposed to be in the nature of evidence. So that 2619 motion was deeply explained in the Howell v. Aqua, Illinois case 2012, fill out 4th 120207. And this court discussed that in depth, that a 2619 motion is then essentially a but, yes, but motion. So your argument would be that the affidavit does not constitute an affirmative matter? Yes, sir. Yes, sir. The affidavit that was submitted by Susie Danner is more in the nature of evidence. That's not appropriate on a 2619 motion, which is supposed to be simply affirmative matter. And so that court, this court in paragraph 30 of the Howell complaint, affirmative matter means some kind of defense other than simply negating the essential allegations of the plaintiff's cause of action. And then in paragraph 37 of that same case, a claim concerning the negation of the plaintiff's pleadings, essentially an assertion of not true, is appropriately resolved either at trial or in a fact-based motion, such as a motion for summary judgment, but not the 2619 motion. And Defendant Danner's affidavit and all the exhibits that were attached to it essentially were that yes, but evidence matter that was not proper to review on a 2619 motion. Now, the defendant wants to make something of the fact that there was no, and the court mentioned it, there wasn't a counter affidavit filed. It was plaintiff's contention at the time that because the evidence was, the affidavit was evidentiary in nature, that the plaintiff could not, would not respond to that as it was inappropriate on that kind of motion. And it's also important to note that earlier in the proceedings in this matter, the court had actually cut off discovery. Defendants requested discovery, the parties exchanged it, and then defendants came in and said, no more discovery, it's too early in the process. Well, discovery and the evidence that comes out in discovery is what you eventually would base the summary judgment motion on. But these parties had never even reached that point, and that was by defendant's own request. I noticed the affidavit cites the PISER case, P-I-S-E-R versus State Farm, which appears to say that an affirmative matter can be material facts, I would think presented by an affidavit, which completely refutes the cause of action. Do you think that case is just wrongly cited, or am I misreading it perhaps? I think the language is... That case... Refutes crucial conclusions of law or conclusions on material fact contained in or inferred from the complaint. That would seem to contradict this court's holding in the Howell case, which said that the affidavit on a 2619 motion cannot simply come in and contradict material fact contained within the complaint. And as the PISER case appears to be a First District opinion, then that would not be controlling on this course, but the Howell case would be. So, plaintiff appellant then contends that the 2619 motion should not have been granted because it was improperly supported by the factual affidavit, which Howell says is not appropriate on those motions. Defendants had requested that discovery be halted. It was, so there was not an evidentiary basis for a summary judgment motion, so the trial court should not have considered that motion as a summary judgment motion. The trial court's confusion extended then to the 2615 motion, which was earlier, and I believe that the trial court possibly conflated the standards, so when it was judging whether the complaint stated a cause of action, it looked at evidentiary material that defendants brought in improperly too soon, and when the trial court went to look at the 2619 motion, it again considered that evidence that defendant was bringing in as factual allegations that should have been submitted as an answer. So, the standard on the 2615 motion is simply, does the complaint state enough facts to apprise the defendant of the cause of action that they're called to answer? And this complaint comes down to, I think, over 100 factual allegations and paragraphs, and to support the counts that were being brought against the defendants. And so, there's plenty of facts in there to apprise the defendants of what was going on. In fact, the original complaint, well, when we get around to the Third Amendment complaint, that fraud claim was based on the language of the contract which was attached to the complaint. In paragraph 6 of the party's original contract, which is in the appendix at page 52, then defendants had signed and agreed to certain warranties, representing that seller had good title to everything that was being sold under this contract. It was discovered by the plaintiff after this matter was initiated, seller did not have good title to all of that. Seller actually did not have permission to enter into this contract at all. Seller was supposed to obtain permission from a third party, represented by way of this contract. What in the record demonstrates that they didn't even have permission to enter into the contract at all? What are you basing that argument on? Plaintiff discovered that fact and alleged it in, I believe, Second and Third Amendment complaints, that it was brought to plaintiff's attention through the process of this matter. Do you have anything, an affidavit from RE-MAX or anything indicating that? Or isn't this just a situation where your client was allegedly told that? Unless there's something, do you have a record site for that? The plaintiff discovered it by way of when the complaint was first served. It was served on RE-MAX corporate in Colorado. And that corporate attorney called me and said, here's some other information you need to know. They disclosed it to me with a confidentiality agreement so that, because the agreement that this language or prohibition against defendant is contained in is proprietary to RE-MAX, so they did not want that disclosed on the public record. But it is part of that agreement that Ms. Danner has to have permission from RE-MAX corporate before agreeing to make any transfers of the franchise or any part of it. So that's not a record though? It's part of the allegations of plaintiff's complaint. And then you have the provision that states that, and I can't remember the exact language, but basically you would require RE-MAX approval if they accepted your client and approved. So how does that impact? Sure. I think the closest analogy with that language is a real estate transaction where a seller comes and says, I'll sell you this property, but of course the buyer has to be approved for their mortgage or their loan before the closing can happen. Everybody knows the approval has to happen. But if you find out as you get to closing that the person purporting to be seller never had clear title to the property in the first place, then whether the buyer could get approved for their loan or not makes no difference. The seller was fraudulent in coming and saying that they could sell the property in the first place. Is that an appropriate analogy though? Because this spoke of RE-MAX having to approve of it, having to approve of your client. I believe it is. I believe there's still two separate issues of him being approved and her even having the right to enter this contract and accept monies under it in the first place. She accepted a payment of $15,000 from him. She then moved her business, basically squatted as a business in this property for a year, never paid rent, never paid utilities, took advantage of the building, and then said, I don't want to follow through with this agreement anymore. And it was after all that fell out, then plaintiff did find out she never had authority to enter the agreement in the first place. So I do think it's two separate issues. Yes, he would have had to be approved, but he would have just found out later perhaps that she never had authority to enter it and we'd maybe still be here on the fraud idea, the fraud claim. And that fraud continued throughout the parties' relationships. So even the second agreement that the defendant wants to come in and say, well they signed this decision, this release, this language, the fraud had begun well before when they represented they could sell this in the first place.  And that essentially is plaintiff's argument to say everything since then is colored by this fraud and you can't take advantage of these agreements that were procured by fraud. Now we did have a breach by your client, correct? Mr. Byron, and it's alleged in the complaint, made numerous attempts to make his second payment. Okay, let me be clear. Did he pay his second payment on time? She never accepted the payments. Did he attempt to pay it on time? He did. Okay. He did. He attempted to make the payment. The first time she said, don't worry about it. The second time later that summer she said, there's other things going on, wait, we'll deal with it later. The third time, maybe same answer, it was three or four times, and it wasn't until the fourth time later in the fall he's trying to make this payment. She says, no, I won't accept it, and by the way, I'm rescinding the whole thing. When was the second payment due? I believe it was due in March of 2013. Okay, and so the record reflects that your client tried to make that payment at that time when it was due and it was refused? I believe it does. Okay. And how did, I guess how did that come to light is what I'm trying to ask. How did it come to light? How did it come to light in the context of this case, in this record, that your client tried to make the payment and the payment was refused? Well, I believe he alleged. What I'm trying to say is how do we know that? Okay. I believe he's alleged it to begin with all along that he attempted to make the payments, and the only dispute of that is her factual dispute of the timeliness of the payments or the dates of these transactions when they occurred. Okay, so the record then reflects that your, in some fashion, reflects that your client tried to make the payment and that the payment was refused, but that's going to be refuted by opposing counsel here in a minute when she gets up and argues? And if it is, again, that's a factual assertion that goes beyond the face of the complaint. Have we stated a claim? Is it defeated by affirmative material, not evidentiary material? We're not even to that point in this matter. This matter is still, the court is still deciding on the face of the complaint. Is there a claim stated and or was it defeated by proper affirmative material? Didn't your client admit that there had been a breach in the rescission agreement? I'm pretty sure that's true. And so what was the breach then if it wasn't fair to tender the payment, second payment when it was due? I don't believe that there was an admission of either party in the rescission agreement of a breach. I'm looking at it now. Are you referring on appendix page 58 to the paragraph that says, the parties acknowledge no party has fully performed its duties or obligations? If that's the language, then yes, the parties had not fully performed it. His second payment had been refused. He never had a chance to make the next payments that were in line. And she certainly did not fulfill her obligation under the first contract. And again, the second payment was due when? March 2013, I believe. Okay. In paragraph 38 of the second amended complaint, it's at 834. It states that in an email dated December 2nd, 2013, Mr. Byrum stated, when I paid the monthly REMAX 2000 bill today, I included the second payment, $10,000 per contract. You have refused my payment twice thus far, once verbally in your office in July and once by email in November. So just based on what I read to that point, would that indicate that that second payment was tendered on time? That would seem to discuss a July attempt, a November attempt, and again, a December attempt. I would not accept the argument that since it does not mention a March attempt, that a March attempt did not happen. It says you have refused my payment twice thus far, once in July and once in November. But you're saying it was refused in March? If you go to the page A33, paragraph 28 of the second amended complaint, on or about March 21st, 2013, when the second payment was due, defendant Mrs. Danner told Mr. Byrum he could make the payment at a later date due to the unexpected expenses of an involvement in unrelated legal matters. That would reference the March conversation, then July, October again in paragraph 33, November in paragraph 35, and then the December attempt in paragraph 38. Are there any other questions on that issue? Thank you. So just to clarify, though, you had asked me and I hadn't responded. I had said that there was a mission of a breach, but I was looking at the language that you say. I decided that both parties admitted they failed to fully perform. Okay. And that is a little bit different than a breach. Yes, and I would argue, and I think it's supported by the record, that statement of the parties have not fully performed, not necessarily a failure, but they had reached this point of dispute and disagreement before it could be fully performed, indeed by Mrs. Danner unilaterally saying she wasn't going to. The other claims of the amended complaint, including unjust enrichment, those claims were repleted pursuant to a case that says you must replete an amended complaint in order to preserve them for appeal. The original claims were between Plaintiff Linwood 2000 and Susie Danner. There was no contractual arrangement between those two parties, and yet it is Linwood 2000 that bore the brunt of those expenses of Ms. Danner essentially squatting her business in that building for a year, paying no rent, paying no utilities, any of the other expenses associated with it. So the complaint then bears out the unjust enrichment claims. We'd ask those to be reinstated. There is the claim for tortious interference, and defendants have tried to say that Ms. Danner was privileged in her actions she took. With regard to that, and I think it's enough to say that she, in that mutual rescission and release agreement, acknowledged that Mr. Byram had certain rights to business arrangements, including those Homesteps listings that are discussed a lot in the record. So there's no privilege when you have acknowledged that somebody else has the right to that business relationship, and then you go and interfere with it. And then finally, the release language that defendants want to make a lot of. Again, the fraud from the original contract of defendants flows through and taints every agreement they make later, and there's bad faith that Ms. Danner and the defendants showed in failing to abide by the other terms of that agreement that included the release language. And finally, the lawsuit began before that release could be signed. The parties had essentially reached the point of no agreement, no return, and so that release itself was never executed, and this dispute arose before it ever could be. For those reasons, and as stated in the record, the plaintiff would ask that this court reverse the orders of the trial court and send this case back to the county level for further trial proceedings. Thank you. Okay, thank you. We'll have rebuttal. Ms. Seuss. Thank you, Your Honor. Okay, please, the court. The defendants would ask that the order granting defendants' motion to dismiss be affirmed. There are a number of ways for this court to come to that particular conclusion, and I think most salient of which are the 2619 motion with respect to the affidavit, and then, of course, the December 2013 release, which was discussed earlier. So I want to first address the affidavit issue. In support of the motion to dismiss, defendant Danner did attach an affidavit pursuant to 26119 and 191B. That affidavit refuted the allegations in Counts 6, 7, and 8, and I think part of the confusion that comes up with these cases when they talk about refuting is that sometimes it's interchanged with deny. But the case that we cited and that Your Honor mentioned earlier shows that there's a long line of cases, including Pizer, that state that an affidavit does operate as an affirmative matter for 2619 if it negates a cause of action or refutes conclusions of law or material fact, and I think that that is fairly clear throughout the case law. I think the distinguishing thing that gets a little confusing is when they say that you can't just refute an allegation. You can refute a material fact or negate a complete cause of action, and in this case, the affidavit itself refuted the entirety of Counts 6, the entirety of Counts 7, and the entirety of Count 8. The fact that plaintiffs essentially in about one paragraph of their response to the motion to dismiss in the trial court stated that they didn't think the affidavit was correct, but then on its face completely failed to respond to what was in that affidavit. I think they've waived their right to then poke at what is contained in that affidavit, and the contents of that affidavit were things that Mr. Byram should have been able to respond to had there been anything to respond to. So for that reason, that affidavit and the failure to respond to that affidavit operates to dismiss Counts 6, 7, and 8. Do you agree with opposing counsel that Howell is inconsistent with the holding in Pizer? I don't believe it's necessarily inconsistent. I think the confusion comes with the term refute, and I think there's been an inconsistency in the way that that term is used throughout. But I think that those two cases actually operate to come to the same result, in that you can use an affidavit for 2619 purposes to refute specific conclusions of law or material fact, but if you're just using it to poke at or deny, sometimes they call that refute, individual allegations throughout, that's a different situation, and that's not what has happened here. There are actually very few allegations in Counts 6, 7, and 8, and so the affidavit itself goes through each and every one of those allegations, first with respect to homesteps and the fact that actually some of the conduct of the plaintiff himself operated to make that entire situation possible. It rendered it impossible for Danner to actually perform on that issue. And then with respect to the disparagement and the payments on the commissions, those aren't actual denials. They're actual showing, there's actual evidence of payments being made that completely refute and get rid of the allegations of failure to pay on different commissions. And if there was anything to respond to, the plaintiff should have responded to that affidavit, which is why in Baezia and a whole bunch of other cases that this Court is aware of, a plaintiff's failure to properly contest an affidavit by submitting a counter affidavit is a fatal flaw, and that is fatal to the cause of action. So with respect to counts 6, 7, and 8, those counts respectfully must be dismissed and the trial court affirmed on that basis. With respect to the release, I'd like to... Is there a factual question whether the second installment was tendered in a timely fashion? I don't think there is. And part of the issue that I had with counsel's argument earlier is that at the onset of this case, if you go back to the beginning of the record, it was actually admitted that that payment was not made on time. There was an admitted breach, and I would disagree with counsel's representation of what that particular paragraph in the release means. I think that paragraph means that both sides have done things wrong that are in breach of the initial contract, and now we're trying to remedy that by mutually releasing ourselves from that prior contract. It was initially admitted, and then through operation of the multiple motions to dismiss, and as the complaint got clearer and clearer, new allegations came out. And this allegation that a payment was made on March, or was attempted to be made in March, was a new allegation that was brought up much after what was agreed to as essentially the deadline for filing suit. And the difficulty with that is it has made things very confusing. But this court brought up a good point in that there was an email where he essentially admitted two times there was refused payment. And the only dates that there has ever been any evidence of would have been the July, November, and December dates. And my client had absolute right to refuse those payments because they were in breach of the original contract. There is nothing in the record to support an allegation that a timely payment was attempted to be made. Absolutely nothing. And to say anything contrary to that would be patently false. And I think that's part of the problem we have with respect to if we got into the fraud allegations that were brought up a little bit earlier. Part of the problem we have is there's the record, and then there are statements outside of the record. And what we heard earlier were statements outside of the record. There's nothing in the record anywhere to support an allegation of fraud that the defendants did not have authority to enter into the initial contract. And the other problem that I have with that argument is not only, I think it's a little unfair to call it an initial contract. It's actually an option contract. It's a contract for sale of assets and a contract for an option to purchase should the person exercise the option and should they get permission from REMAX to enter into the franchise agreement. It's not a sale of the entire business. That is an option contract. It's a little bit different than a straight-up sale of a business. At no point in time anywhere in the record is there anything to support anything that is outside of what is contained in that initial contract. And to bring in parole evidence and to allow counsel to just cite the conversations that are nowhere in the record is hugely improper at this point, I think. With respect to the December of 2013 release, that release effectively eliminates counts 1 through 3 and 10 through 11 because those arise out of the August 2012 option contract attached to the complaint. It's part of the record. It's admitted to. It's signed by all parties. They were all represented. Parole evidence outside of that release and outside of that option contract is improper. And the only thing that counsel has brought to argue against that is that fraud allegation, which is not supported by the record. And for that reason, based upon 2619A6, counts 1 through 3, 10 through 11 must be dismissed and the trial court's order must be affirmed. I want to turn then to the tortious interference counts, which are counts 4 through 5. And we've already talked a little bit about the issues with whether or not the plaintiff has admitted to breaching the August 2012 contract, and I won't get back into that. But my position is that based upon the record, there has been an admission to that. The trial court properly dismissed counts 4 and 5 because the only allegations that are contained in counts 4 and 5 are that Defendant Danner, subsequent to that breach and before executing the December 2013 release, did a couple of things that were essentially privileged actions, you know, to allow people to go and get other jobs or to sell different things for business to protect her own economic interest with her privileged actions. And as a result, the trial court properly dismissed those counts. With respect to count 9, which is a little bit of an unusual count, it's essentially a breach of contract for failure to cooperate with the accounting as set forth in the December of 2013 agreement. And the problem we have here is going back to that release, that December 2013 release. In that particular release, the parties agreed to engage in a process of accounting or file for an accounting on or before July 1st of 2014. Nowhere in any complaint has there ever been a count for an accounting. That would be a chancery account or a chancery complaint, and it essentially would have to allege that there was an absence of an adequate remedy at law and then a number of factors under there alternating. Here we have a breach of contract. It is a law complaint, and it contains none of the necessary elements to ask for an accounting. This is a completely different allegation than what was contemplated in the December of 2013 release. And quite frankly, based upon that December of 2013 release, such a count as is alleged in count 9 was waived and released based upon the plain language of that agreement between the parties. I'm trying to get through all of the counts that we have here. The last part that I essentially want to talk to is just flowing from that, which is essentially with the operation of the December 2013 release and the exclusive remedy that was bargained for within that. In that particular release, all parties entered into a release, and by its express terms, if neither party filed for an accounting prior to July 1st of 2014, both parties agreed to waive the right to an accounting. And then operation of two other paragraphs came into account, the covenant not to sue and the mutual release of liability, wherein the parties expressly agreed to waive the right to assert any cause of action from the initial contract and the release against one another. And the issue that was brought up with respect to this is that there was no signing of the second release that set forth what was set in there. But a person cannot agree to something, have that agreement come to fruition, and then decide after the fact that, you know, I just don't want to sign it. And the courts are very clear that the failure to sign a release does not make a settlement agreement inofferable. It is clear by the plain language of the December 2013 release that the parties intended for after July 1st of 2014, if the accounting provision was satisfied, meaning either an accounting was done or neither party filed soon on that accounting, that there was a covenant not to sue and a mutual release of liability. That is what was bargained for by the parties. Both the plaintiff and defendant were represented. In fact, they were represented by the counsel that is here in this room. The language is clear. There was no duress. There were specific facts upon which the release was based throughout that release. And parole evidence is only admissible when the contract is ambiguous. And there is nothing ambiguous about either of the contracts in this case. As a result of the failure of either party to file the accounting prior to July 1st of 2014, the operation of that is that the trial court was correct. Regardless of whether or not you look at 2-615 or 2-619, this complaint was ripe for dismissal and the trial court's decision should be affirmed. Thank you. Thank you. Is there any rebuttal? I want to address a couple things. First of all, there was a lot of mention in the appellee's argument about evidence and the facts of it or refuting or denying evidence. We're not here on evidence. We never got to that point at the trial level. The whole issue is the survival of the complaint. I think it's telling that defendants have felt compelled to bring forth some evidence to try to refute or deny the allegations of the complaint because that tends to show the complaint itself does state a cause of action and they felt the need to defend against it, but have wanted to disguise that defense in the realms of a 2-615 motion, 2-619 motion and not call it what it really is. Let's get past the point of the pleadings and to the evidence. If there's evidence to hear and decide which is right, which is wrong, which is credible, which is not, let's get there. But we're not to that point yet. That's what we're here for today is to say the complaint needs to survive for the parties to actually bring forth their evidence. The release language in the parties' agreement, the court, you'll be able to read through that and see yourselves, but it is clear language. That release was to be signed after the parties cooperated in everything leading up to July 1, 2014, which Ms. Danner did not do, which led us to this lawsuit. So the release that's contemplated in here can't be enforced against Mr. Byram or the plaintiffs when Ms. Danner herself breached everything that would lead up to it. And then that distinction of the refute or deny between the Pizer case or the Howell case I think is minute. And the Pizer case is 2010 from another district. The Howell case from 2012 in this court is on squares with what this case is saying and you can't bring in that affidavit on a 2619 motion, which is all this evidence refuting or denying the complaint, whichever word you want to use to describe it. You can't use evidence on a 2619 motion and defeat the complaint that way. And for that reason, the court's decision to dismiss the complaint based on the 2619 motion was an error, and so we ask that this case be sent back for further trial proceedings. Thank you. Thanks to both of you. The case is submitted and the court stands in recess until after lunch.